BASS v. JOSEPH. (No. 5965.)

(Court of Civil Appeals of Texas. San Antonio. Feb. 20, 1918. Rehearing Denied March 27, 1918.)

1. MORTGAGES ⬤═86(3)—VALIDITY—INSANITY —EVIDENCE.

Evidence *held* to support a finding that a mortgagor was of unsound mind when he executed the mortgage, although the witness did not see him on the day he executed the mortgage.

2. INSANE PERSONS ⬤═75—LENDING MONEY TO—RECOVERY.

Mortgagee lending money to a person of unsound mind is not entitled to recover all of it, where only a part of it was expended for necessaries.

3. INSANE PERSONS ⬤═99 — ACTIONS — FINDINGS.

Where mortgagee sues to recover all of the money lent to a person of unsound mind, and does not at any time ask for such part as was expended for necessaries, and he makes no objection to an issue asked the jury as to whether the deceased expended the money for necessaries to which the jury answered "No," he cannot maintain that the answer of the jury and a judgment thereon were contrary to the law and evidence, although it was undisputed that some of the money had been expended for necessaries and for the benefit of the insane person's estate.

Appeal from District Court, Bexar County; J. T. Sluder, Judge.

Suit by Julia H. Bass against Lee Joseph, administrator of the estate of Antonio P. Seguin and Emilia Seguin, deceased. Judgment for defendant, and plaintiff appeals. Affirmed.

Wm. C. Church and Claud J. Carter, both of San Antonio, for appellant. T. G. Jackson, of San Antonio, for appellee.

MOURSUND, J. This suit was instituted by appellant, Julia H. Bass, against appellee, Lee Joseph, administrator of the estate of Antonio P. Seguin and Emilia Seguin, deceased, upon a promissory note executed by Antonio P. Seguin, deceased, for $450, and for the foreclosure of two deed of trust liens upon certain real estate in San Antonio and 100 acres of land in the counties of Wilson and Bexar, alleged to have been executed by Antonio P. Seguin individually and as survivor of the community estate of himself and of his deceased wife. Defendant pleaded in effect that Antonio P. Seguin was of unsound mind at the time he executed the instruments sued on, and that such fact was known to plaintiff and her agents or could have been ascertained by inquiry. In reply plaintiff denied that Seguin was of unsound mind, and alleged that the sum of money evidenced by the instruments sued on was turned over and delivered to Seguin and was used for the benefit of his individual estate and the community estate of himself and his deceased wife, and that the money advanced on said note was expended for necessaries and for the protection and benefit of the estates of Seguin and wife.

The court submitted the case to the jury on two special issues: (1) Was Antonio P. Seguin of sound mind at the time he executed the instrument sued on? (2) Did he disburse or spend the money procured on the execution of the note and deeds of trust for necessaries or for the protection and benefit of his estate? The jury answered both questions in the negative, and upon such verdict judgment was entered in favor of the defendant.

By the first assignment complaint is made of the refusal to give appellant's requested peremptory instruction; two contentions being urged: First, that the evidence failed to show Seguin was of unsound mind at the time he executed the instruments; and, second, that it was undisputed that the money or a part thereof was disbursed for necessaries or for the protection and benefit of the estates of Seguin and wife. In support of the first contention, it is shown that the witnesses who testified to the unsoundness of Seguin's mind admitted they did not see him on March 25 and April 22, 1916, the dates the instruments were executed, and that the

witnesses for plaintiff who saw him on those days testified either that he was of sound mind or that there was nothing in his conduct or speech to indicate insanity.

Dr. Springer, the only medical witness who testified, stated that Seguin was insane when he saw him in January, 1916; also about a month afterwards; also that he saw him seven or eight times about March, 1916; that he was insane each time he saw him, and insane when he died on May —, 1916; that his condition was worse each time he saw him; that he was suffering from alcoholic insanity, and that when a man uses alcohol to such an extent that he is insane he is never the same man again; that he has weakness of memory and will, loss of preception and judgment, and has hallucinations and delusions; that when a man is in that condition witness did not think he could get back into a sound condition again. Certain answers of this witness are relied on by appellant as concessions that he could not speak with regard to Seguin's condition on the two dates mentioned because he did not see him on such dates. His testimony on the whole shows that his opinion was that Seguin was continously of unsound mind up to the time of his death to such extent as to render him unfit to contract.

There is also the testimony of his relatives as to his unsoundness of mind on each occasion when they saw him; of his persistent and unremitting indulgence in intoxicants up to the time of his death; and of the sale of considerable property by him, and the disposition or loss of a considerable amount of the proceeds without any benefit to his estate. His relatives sought to prevent him from obtaining money because convinced that he was incapable of taking care thereof, and had warned those conducting the matter of making the loan for plaintiff of his mental condition before they parted with any money to him.

[1] In view of the cause of the insanity from which Seguin suffered at the times when Dr. Springer saw him, and of the testimony as to the permanency of the condition thus brought about, accompanied with proof of Seguin's continued indulgence to excess in alcohol, the testimony, we believe, warrants a finding that at the times he executed the instruments sued on Seguin was afflicted with such unsoundness of mind as rendered him incapable of contracting.

[2] It is evident that if only a part of the money delivered to him was used by him for necessaries or to protect or benefit his estate the court would not have been justified in giving a peremptory instruction to find for plaintiff, which would mean that plaintiff should recover the entire debt sued for. Therefore the second contention shows on its face that it is without merit, and the facts are ample to show that plaintiff was not entitled to a peremptory instruction on the second theory.

The second assignment complains of the submission to the jury of the issue whether Seguin was of unsound mind, and is disposed of adversely to appellant by what has been stated above.

[3] The third assignment reads as follows: "Because the verdict of the jury and the judgment of the court based thereon are contrary to the law and evidence in this, that the court charged the jury as follows, to wit: 'Did Antonio P. Seguin, now deceased, disburse or spend the money procured on the execution of the notes and mortgage in evidence before you for necessaries or for the protection and benefit of his estate? Answer this question "Yes" or "No."' To which the jury answered 'No,' and the undisputed evidence introduced in this cause shows conclusively that all of the money procured on the execution of the note and mortgages in evidence was disbursed or spent by the deceased, Antonio P. Seguin, for necessaries or for the protection and benefit of his estate or at least a certain portion thereof, for all of which the plaintiff is entitled to recover of the defendant."

The proposition submitted under the assignment is the same as the second proposition under the first assignment, namely, that, it being undisputed that the money or part thereof was disbursed for necessaries or for the protection and benefit of the estates of Seguin and his wife, it was the duty of the court to instruct a verdict in appellant's favor. The proposition is not applicable to this assignment, and is without merit, as has already been pointed out. The assignment may be considered as a proposition to the effect that, if all or part of the money was expended for necessaries or the protection and benefit of Seguin's estate, the finding of the jury is without evidence to sustain it, and therefore such finding and the judgment based thereon should be set aside. The issue was framed in accordance with appellant's pleading, wherein it was alleged that the money paid out by her on the note was thus spent, meaning, of course, all the money. She did not by pleading raise the issue whether part of the money was thus spent, nor ask the court to submit such issue, nor object to the form of the question asked. Unless the jury found that all of the money was spent for necessaries, etc., it was bound to return a negative answer to the issue. The evidence amply sustains the finding, for appellant failed to show that all the money was spent for such purposes. Therefore the answer was correct and cannot be set aside, nor can the judgment be set aside on the ground that such answer is not supported by evidence.

If the assignment can be construed as containing any other propositions, it will be multifarious, and not entitled to be considered. We do not understand, however, that it is intended to be urged that, regardless of the verdict, the court should have allowed a recovery for such portion of the money as the undisputed evidence might show to have

been expended for necessaries, but that if any part of the money was thus expended the verdict must be set aside. If it was desired to raise the issue that certain items should have been adjudged to have been expended for necessaries, it should have been done by an appropriate assignment.

The assignments of error are all without merit, and the judgment must be affirmed.